B. A. EZELL *et als.* *v.* JOHN D. WRIGHT *et als.*

MARRIED WOMAN.   *Receipt for funds arising from sale of land.*   Where a married woman goes in porson and, with her husband, gives a receipt for her share of the proceeds of land sold by decree of court for division, and directs the money to be credited on the husband's notes as purchaser at the sale, she has received the money in person within the meaning of the Code, section 3319, although no money was in fact counted out to her; and, nothing further appearing, she will thereby acquire no interest in the land as against the husband's creditors, especially if the facts be reported to the court and confirmed.

FROM GILES.

Appeal from the Chancery Court at Pulaski.   W. S. FLEMING, Ch.

W. H. McCALLUM for complainants.

J. A. TINNON for defendants.

COOPER, J., delivered the opinion of the court.

The complainants are judgment creditors of the defendant, John D. Wright, and, as such, filed this bill to subject to the satisfaction of their debts a tract of land as the equitable property of their debtor. Shortly after the filing of the bill, Mary E. Wright, the wife of John D. Wright, presented a petition, claiming the land by way of resulting trust, and asking to be made a party defendant for the purpose of asserting her rights.   The complainants offered no ob-

jection, and an order was made accordingly. Afterwards, a statement of facts was agreed upon, the petition of Mary E. Wright being treated as an answer, and the cause ·was heard by the Chancellor, who rendered a decree in favor of the complainants. Wright and wife appealed.

Under a bill filed for the settlement and distribution of the estate of the father of Mary E. Wright, then Mary E. Bennett, to which she was a party, the land in controversy was sold on the 19th of October, 1866, and the defendant, John D. Wright, became the purchaser, paying $100 in cash, and giving his two notes, with security, to the clerk and master, for $1,604.23 each.

On the 3d of the succeeding month, a decree was entered in the cause confirming the sale, divesting the title to the land out of the heirs, and vesting it in John D. Wright, and ordering the clerk and master to make him a deed upon payment of the purchase money. By a subsequent report in the cause, which was confirmed, the share of the defendant, Mary E., who had intermarried with the ˙defendant, John D. Wright, after the confirmation of the sale, in her father's estate was ascertained to be $2,748.13, and on the 11th of November, 1870, she and her husband joined in a receipt to the clerk and master of this sum of money as her share. No money was in fact paid, but the amount was simply credited upon John D. Wright's notes, leaving a balance of $1,095.84, which was afterwards paid by his ˙surety. On the 23d of September, 1875, Mary E. Wright filed her

petition in that cause, praying that the lands bought by the husband be settled to her sole and separate use, and the petition was ordered to be filed reserving equities, but no further action has been taken thereon.

· The land in controversy having been bought by the defendant, John D. Wright, and the title thereto having been divested out of the heirs and vested in him before his intermarriage with the defendant, Mary E., it is clear that the claim of the latter to the land by way of resulting trust necessarily fails. Resulting trusts can only arise upon the state of facts existing at the time of the purchase, and not afterwards. *Gee* v. *Gee,* 2 Sneed, 396; *McCall* v. *Flippin,* 2 Baxter, 161. A constructive trust may, however, arise by the use by a trustee, or other person occupying a fiduciary relation, of the funds of the beneficiary in paying for land already bought, and the beneficiary may have the option of following the fund into the land as against creditors. *Gannaway* v. *Tarpley,* 1 Col., 572; *Bloomer* v. *Bloomer,* 6 Baxt., 98; *Turner* v. *Petigrew,* 6 Hum., 438. Our decisions in this regard, so far as they give to the constructive beneficiary a superior right to the claims of creditors, is perhaps a departure from principle. *McCall* v. *Flippin,* 2 Baxt., 161. To bring this case within the rule, there must be an appropriation of trust money in violation of the trust.

The distributive share of Mary E. Wright in the money, into which the property of her father's estate had been converted under the decrees of the Chancery Court, was a fund which the husband might reduce

to possession, and thereby make it his property. Previous to our statutes touching such funds, he would have had the right to have demanded its payment to him by the clerk. The wife had only an equity to a settlement which required an application to the court to secure. This was changed by the act of 1852, ch. 166, sec. 3, brought into the Code in sections 2483, 3319, 3320, 4052. The first of these sections is more nearly in accord with the language of the original act, but the subsequent sections are in *pari materia*, and they must all be construed together. Thus construed, they forbid the payment out of court of the proceeds of the real or personal property of a married woman, except to her in person, or as she may direct upon privy examination, the direction to be reduced to writing and entered on the minutes of the court, or by power of attorney by husband and wife upon privy examination of the wife. These provisions of the statute law were intended to give the wife an opportunity to actively interpose in obtaining or investing the fund. Until this right has been exercised out of court, or determined in court by proper orders and decrees in the cause in which the fund was created, the money is subject to a trust in her favor, and she may follow it accordingly. *Bloomer* v. *Bloomer*, 6 Baxt., 98.

The question in this case, therefore, is, has the defendant, Mary E. Wright, herself appropriated the fund within the meaning of the statute, or has it been appropriated by a decree of the court so as to be conclusive upon her until set aside in some legal mode?

*Neil* v. *Smith*, 1 Lea, 371. The defendant, Mary E., in her petition, which is treated as an answer to the bill, after reciting the institution of the suit for the distribution of her father's property, and the subsequent proceedings down to the ascertainment of her share in the fund in court, says: "Her husband informed her of the amount then due to her from said estate, that she could now take the purchase of said land as had been agreed between them, and have the same settled upon and secured to her in her own right by deed or decree of the court, as the whole matter was still in court. Petitioner agreed to this, and in order to consummate the arrangement, came to Pulaski and signed the receipt to the clerk and master for her distributive share, dated November 11th, 1870, and directed the same to be credited upon said purchase money for said land, and to be vested in said land for her separate estate. This was the whole transaction."

She had previously in her petition stated that her husband informed her that he had made the purchase of the land for her, and the language of the clause quoted has reference to this statement. But there is. no evidence of any agreement at any time between the husband and wife in relation to the land, and the wife's rights must turn upon the facts agreed upon in connection with the facts admitted by her answer. These facts, stripped of all statements not proven, are, that she came in person to Pulaski, signed the receipt for her distributive share, and directed the same to be credited upon the purchase money for the land. And

these facts, the agreed statement shows, were embodied in the subsequent report of the clerk and master to the court, which was confirmed.

It is obvious, therefore, that the wife was personally present when the receipt was given, and consented to the appropriation of the money in payment of her husband's notes, and that this action on her part was sanctioned by a decree of the court in that cause. No money, it is true, was in fact paid. It was considered as paid to her and repaid on the debt. Unless the court stands upon the letter of the statute, and requires the actual counting of the money, and delivery to the wife, what was done must be held to be a reasonable compliance with the terms of the law. The object of the statute was to give her notice of her rights, and to require some formal act on her part in person to the payment or appropriation of the money. In legal effect the money was paid to her in person, and she controlled and directed its appropriation, and, so far as appears, without any qualification or condition. The alleged understanding between her and her husband, if of any effect, was matter in avoidance which she was bound to prove. The fund was reduced to possession by the husband with the assent of the wife. Her own acts, as admitted, are conclusive on her, and the decree of the court confirming the report of what was done under her direction was, probably, equally conclusive, never having been appealed from or set aside in any legal mode.

There is no error in the decree of the Chancellor, and it must be affirmed with costs.